UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DARNELL ANTHONY JACKSON,<br>*et al.*,<br>Defendant. | Criminal No. 06-227-01<br><br>**FILED**<br><br>AUG 1 1 2006<br><br>NANCY MAYER WHITTINGTON, CLERK<br>U.S. DISTRICT COURT |

### DETENTION MEMORANDUM

The Defendant, Darnell Anthony Jackson, also known as Donnell Jackson, also known as "Fats," also known as Darnell Adams, has been charged by indictment with conspiracy to distribute and possess with intent to distribute one kilogram or more of phencyclidine ("PCP"), a Schedule II controlled substance, in violation 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1) and § 841 (b)(1)(A)(iv); unlawful possession with intent to distribute and distribution of one kilogram or more of PCP, and aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841 (b)(1)(A)(iv) and 18 U.S.C. § 2; unlawful distribution of one hundred grams or more of PCP in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841 (b)(1)(A)(iv); and criminal forfeiture in violation of 21 U.S.C. § 853 and § 853(p). The Government requested a detention hearing, which was held on August 9, 2006. At the conclusion of the detention hearing, the Court found that the Defendant

should be held without bond. This memorandum is submitted to comply with the statutory obligation that "the judicial officer shall include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

### Findings of Fact

At the detention hearing, the Government proffered that the Defendant was involved in a conspiracy to import and distribute gallons of PCP to the Washington, DC metropolitan area from approximately September 2005 through at least July 27, 2006. According to the government, the Defendant and Mr. Hopkins, as leaders of the conspiracy, purchased gallons of PCP from Mr. Tony Fitzgerald Hilt, also known as "T." Mr. Hilt, a member of the L.A. based gang Mona Park Crips, sold PCP to the Defendant, Mr. Hopkins, or to various other intermediaries of the conspiracy.[1]

The Defendant and Mr. Hopkins imported the PCP from California to Washington, DC by enlisting female couriers to individually transport a gallon of PCP in their checked-in luggage from Long Beach, CA to Washington, DC.[2] The couriers and the conspirators[3] would fly from Dulles International Airport ("IAD") located in Dulles, VA, to Long Beach Airport ("LGB") located in Long Beach, CA by commercial airlines. The couriers included: Ms. Tinesha Denise Adams,[4] Ms.

---

[1] The sale transaction would occur at Mr. Hilt's home in Los Angeles, CA.

[2] After the trips were complete, the Defendant and other conspirators paid the couriers for their flight, hotel and travel expenses with travelers checks, Western Union transfers, and money-grams. Many of the money grams were purchased from a Shopper's Food Warehouse grocery store, which the Defendant frequents.

[3] The Government proffers that the Defendant and Mr. Hopkins usually accompanied the couriers on their trips to and from California. However, at times the couriers were accompanied by other conspirators.

[4] Ms. Adams made 12 trips.

Shawntae Anderson,[5] and Ms. Lanika Mercedes Franklin.[6] After purchasing the PCP from Mr. Hilt, the conspirators, with the assistance of the couriers, would purchase shampoo, lotion, and Listerine bottles and empty the contents of the bottles to later fill them up with PCP. The couriers carried these bottles in their checked in luggage on their flight back from LGB to IAD.

The flight records indicate that the conspirators made about 25 flights between the Washington, DC area to Long Beach, CA from September 2005 through at least July 27, 2006.[7] Once the PCP was in the Washington, DC area, the conspirators would dilute the PCP with starter fluid and sell the diluted PCP to wholesalers and distributors. The conspirators would meet to sell the PCP and exchange money at various locations in Washington, DC and suburban Maryland, including Ms. Wanda Owens'[8] apartment, Mr. Hargrove's apartment, Mr. Hopkin's father's home, and the Safari Steakhouse.

The Defendant along with Mr. Hargrove traveled many times to California. They both traveled on January 17, 2006 from IAD to LGB and returned on the 18th. Upon their return, they went to Mr. Hargrove's apartment, diluted the PCP and sold it. The Defendant also traveled to LGB

---

[5] Ms. Anderson made 11 trips.

[6] The exact number of trips that Ms. Franklin made is unknown, however she did travel numerous times.

[7] The flight records indicate that the conspirators used JetBlue, Southwest, and AmericaWest airlines. It is estimated that at least one gallon of PCP was carried back from Long Beach on each trip, which equals about 25 gallons of undiluted PCP being imported to the Washington, DC area. One gallon of liquid PCP equals approximately 3.7 kilograms of the drug. The Government proffered that the actual amount of PCP imported actually exceeds the special allegation amount of 20 kilograms listed in the indictment. In a superceding indictment, the Government will allege the full amount.

[8] Ms. Wanda Owens is the Defendant's sister.

on March 9, 2006, March 15, 2006, and April 4, 2006, returning March 10, March 15, and April 16 respectively.[9]

Authorities surveilled and video taped the Defendant in Los Angeles on March 10, 2006 with Mr. Hilt at Mr. Hilt's home purchasing and picking up a gallon of PCP for $15,000. Ms. Dominique Michelle Washington, another courier, picked up the Defendant from Mr. Hilt's home in a rental car.[10] The Defendant and Ms. Washington were both later seen at a beauty supply store purchasing shampoo bottles that they would empty and fill up with PCP.

In May, 2006, a wiretap was placed on the Defendant's phone. Most of the Defendant's conversations between the conspirators were about PCP or cocaine and none were social in nature.[11] Through the wiretap, authorities heard the Defendant calling other conspirators and discussing the implication of the seizure of two gallons of PCP. FBI agents had intercepted Ms. Franklin and Ms. Adams, two couriers, and seized the PCP they were carrying on May 24, 2006.[12] The FBI agents, posing as airport security, asked the couriers if they could perform a routine bag check. With the courier's permission, the FBI searched their luggage and discovered that each courier had one gallon of PCP in toiletry bottles. The FBI agents seized the PCP, but did not arrest the couriers. After the

---

[9] On the April 4, 2006 trip, the Defendant traveled with Mr. Roots.

[10] The rental car was rented in Ms. Washington's name.

[11] In addition to the Defendant's conversations related to the PCP conspiracy, authorities also overheard the Defendant planning with others to avenge his cousin's attempted murder. The Government corresponded with the Chicago Police Department to prevent this revenge plot.

[12] The couriers were returning from LGB to IAD.

- 4 -

---

incident, the Defendant called other conspirators and voiced his concern that the couriers were not arrested and that they may have cooperated with the FBI agents.

Additionally, the Defendant personally sold diluted PCP in several controlled buys in January, March, May, and July of 2006. In one single controlled buy, the Defendant sold 1425 grams of PCP. In another controlled buy, the Defendant sold 747 grams of PCP. Agents also heard the Defendant explaining to another conspirator how to stretch out the volume of PCP by diluting it with starter fluid. The Defendant referred to himself as the "Starter Fluid King."

According to government records, the Defendant has at least four prior convictions and arrests for violent crimes. The Government arrested the Defendant at a hotel near Kings Dominion. When the authorities entered the hotel room, the Defendant sped to the bathroom and flushed something down the toilet. The authorities recovered a glass vile.

## Discussion

The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.* (hereinafter "the Act"), provides, in pertinent part, that if a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person . . . [or] the safety of any other person and the community, such judicial officer shall order the detention of the [Defendant] before trial." 18 U.S.C. § 3142(e). Danger to the community alone is a sufficient basis upon which to order pretrial detention, if the judicial officer finds by clear and convincing evidence that Defendant's pretrial release would constitute an unreasonable risk of danger to the community. *United States v. Salerno*,

481 U.S. 739, 755 (1987); *United States v. Perry*, 788 F.2d 100, 113 (3d Cir. 1986); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986). When, as here, there is probable cause to believe that a Defendant has committed a violation of the Controlled Substance Act for which a maximum penalty of 10 years or more is prescribed, a rebuttable presumption arises that the Defendant constitutes a danger to the community, and no pretrial release condition or combination of conditions may be imposed to assure his future presence in court or to reasonably assure the safety of the community.

Here, the government seeks pre-trial detention on the grounds that the Defendant poses a danger to the community and a risk of flight. In determining whether there are conditions of release which will reasonably assure the safety of the community, the judicial officer shall take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the Defendant; (3) the Defendant's history and characteristics, including the Defendant's ties to the community; and (4) the nature and seriousness of the danger to any person or to the community which would be posed by the Defendant's release. *See* 18 U.S.C. §3142(g).

The first factor, the nature and circumstances of the offense, favors detention. The Defendant is charged with leading a conspiracy to distribute massive amounts of PCP into the Washington, DC area.

The second factor, the weight of the evidence, also favors detention. According to flight records, the Defendant, accompanied by the couriers, made several trips to Long Beach, CA. The

Government has surveillance video of the Defendant involved in PCP transactions. The Defendant also sold PCP in several controlled buys in January, March, May and July of 2006. The Government has oral evidence from a wiretap placed on the Defendant's phone in May 2006. The Defendant was heard on the wiretap conversing in code about the PCP and cocaine sales, the dilution of PCP with starter fluid, the plot to avenge his cousin's attempted murder, and the government's seizure of two gallons of PCP from two of his couriers. In addition the Defendant fled from officers to a bathroom where he allegedly attempted to flush drugs on the day of his arrest.

The third factor, the history and characteristics of the Defendant, supports pretrial detention. The Defendant has prior convictions which include possession with intent to distribute marijuana, sex abuse, gaming tables, simple assault, destruction of property, possession with intent to distribute cocaine, possession of an unregistered firearm and shoplifting. The fourth factor, the nature and seriousness of the danger to the community should the Defendant be released, also favors detention. Although the instant charges did not involve violent activity, the Defendant was heavily involved in importing a massive amount of PCP, a dangerous and illegal substance that causes violence in the Washington, DC area.

### Conclusion

Based upon consideration of all the evidence and the factors set forth in 18 U.S.C. § 3142(g), the Court concludes that the evidence clearly and convincingly establishes that the Defendant's pretrial release would constitute an unreasonable risk of danger to the community. The presumption

in favor of detention established by the statute has not been overcome by the Defendant in this case.

Therefore, the government's motion for pretrial detention is granted.

Dated: August 11, 2006

_____
ALAN KAY
UNITED STATES MAGISTRATE JUDGE